IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

**KENNETH JEROME SILER,**

    **Plaintiff,**

v.                                              Case No. 3:10-cv-289

**Officer JOSEPH FLOYD, of Crestview
Police Department and Chief BRIAN
MITCHELL of the Crestview Police Department,**

    **Defendants.**
_____/

## ORDER

Before me is Defendants' motion for summary judgment (Doc. 34).

### I. STANDARD OF REVIEW

The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S. Ct. 2505, 2512 (1986). The moving party has the burden of showing the absence of a genuine issue as to any material fact, and in deciding whether the movant has met this burden, the court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398

U.S. 144 (1970); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). Thus, if reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment. *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992) (citing *Mercantile Bank & Trust v. Fidelity & Deposit Co.*, 750 F.2d 838, 841 (11th Cir. 1985)). However, a mere 'scintilla' of evidence supporting the nonmoving party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party.  *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 251).

## II. BACKGROUND

I accept the facts in the light most favorable to Plaintiff.  *See Galvez v. Bruce*, 552 F.3d 1238, 1239 (11th Cir. 2008) (citing *Vinyard v. Wilson*, 311 F.3d 1340, 1343 n.1 (11th Cir. 2002)).  " 'All reasonable doubts about the facts should be resolved in favor of the non-movant.' "  *Id.* (quoting *Burton v. City of Belle Glade*, 178 F.3d 1175, 1187 (11th Cir. 1999); *Clemons v. Dougherty County*, 684 F.2d 1365, 1368-69 (11th Cir. 1982).

Plaintiff is a Crestview, Florida, resident.  Defendant Floyd is an officer with the Crestview Police Department, and Defendant Mitchell is the Chief of Police of the Crestview Police Department.  During 2008, Plaintiff publicly spoke out in the Crestview community concerning Crestview Police Department officers' treatment

of black citizens and use of excessive force during arrests. In February 2008, Plaintiff filed an official complaint with the Crestview Police Department alleging misconduct by Floyd. The Crestview Police Department conducted an investigation of the complaint, but ultimately determined that the complaint was unfounded. Following Plaintiff's complaint, Plaintiff alleges he became a target of harassment by Floyd. (Doc.1).

The first incident giving rise to this suit occurred on April 29, 2008. Defendant Floyd and Officer Jordan were on-duty near Plaintiff's property, known as the "Lot." The Lot is open to the public, and on the night in question, Defendant Floyd and Officer Jordan saw a man in the lot who had been reported earlier as engaging in suspected drug activity. Whether the man was engaging in criminal behavior at the time is disputed. Defendant Floyd and Officer Jordan drove their vehicle into the Lot, which was surrounded by a chain-link fence. Plaintiff arrived at the Lot and parked his truck in the gate opening so that Defendant Floyd and Officer Jordan were prevented from exiting. Defendant Floyd instructed Plaintiff to move his truck several times and threatened to arrest Plaintiff. Plaintiff ignored this instruction for several minutes before moving his truck. As a result of this encounter, Defendant Floyd filed a Report of Arrest and obtained a Criminal Summons from the magistrate judge for obstruction. Plaintiff entered in a Deferred Prosecution Agreement, which allowed Plaintiff to avoid prosecution

upon the completion of certain conditions.  Plaintiff completed these conditions and was not prosecuted.

The second incident took place on August 28, 2008.  Sergeant Harp with the Crestview Police Department reported to Main Street in Crestview to help a man who had cut himself and threatened he would do so again.  To prevent the man from further self-injury, Sergeant Harp tasered the man before the ambulance arrived.  Plaintiff was in the area, an estimated 150 feet away from the ambulance, with his daughter when he stopped to speak with off-duty Sergeant Lewis.  Plaintiff, while standing with Sgt. Lewis, saw Defendant Floyd go through a stop sign.  There is no dispute that Defendant Floyd was on-duty at this time.  He was working undercover narcotics surveillance and responded to the scene because he was also the taser instructor and responsible for reviewing all uses of a taser by CPD officers.

Plaintiff then moved towards the scene loudly telling Defendant Floyd that he had seen him run the red light.  There was a confrontation and verbal exchange between Plaintiff and Defendant Floyd.  Defendant Floyd asked Plaintiff to move away from the back of the ambulance, and Plaintiff said that Defendant could not ask him to leave as he was lawfully on a public sidewalk.  At some point, Defendant Floyd placed his hand on Plaintiff's chest to make him back away, and Plaintiff pushed Defendant's hand away.  Defendant Floyd then tried to place

Plaintiff under arrest for battery on a police officer.  When Plaintiff protested, Defendant threatened to use a taser and also arrest Plaintiff for resisting arrest.  Plaintiff was then arrested.

Plaintiff then filed a seven-count complaint, alleging violation of his civil rights under the Fourth Amendment, violation of his civil rights to due process, battery, false imprisonment, and malicious prosecution.  Count four was later dismissed (Doc. 16).  Defendants now move for summary judgment on the remaining counts.

### III. ANALYSIS

Count 1

Count one is a civil rights claim against Defendant Floyd for violation of Plaintiff's Fourth Amendment rights regarding the August 28, 2008, incident.  Defendant Floyd seeks summary judgment on count one, arguing that he is entitled to qualified immunity.  Qualified immunity is a shield against liability for government actors, prohibiting "civil damages for torts committed while performing discretionary duties unless their conduct violates a clearly established statutory or constitutional right."  *Hadley v. Gutierrez*, 526 F.3d 1324, 1329 (11th Cir. 2008)(citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Qualified immunity "'allow[s] government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all

but the plainly incompetent or one who is knowingly violating the federal law.' " *Beshers v. Harrison*, 495 F.3d 1260, 1265 (11th Cir. 2007) (quoting *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002)).  "Qualified immunity is 'an *immunity from suit* rather than a mere defense to liability . . . .' " *Scott v. Harris*, 550 U.S. 372, 372 n.2 (2007) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

Qualified immunity requires a three-step inquiry.  First, the defendant public official must prove that " 'he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.' " *Courson v. McMillan,* 939 F.2d 1479 (11th Cir. 1991)(quoting *Rich v. Dollar,* 841 F.2d 1558, 1563-64 (11th Cir. 1988)).  Once this is established, the burden shifts to the plaintiff, and the second question is "whether '[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show [that Defendants'] conduct violated a constitutional [or statutory] right?' If so, the [next] question is whether the right, be it constitutional or statutory, was clearly established." *Hadley v. Gutierrez*, 526 F.3d at 1329 (quoting *Saucier v. Katz,* 533 U.S. 194, 201 (2001))(internal citations omitted).

There is no dispute among the parties that Defendant Floyd was on-duty at the time of the incident.  Therefore, the first step is met, and the burden shifts to Plaintiff to show that Defendant violated a clearly established constitutional right.

The Fourth Amendment protects individuals from unreasonable searches and seizures, and an arrest without probable cause clearly violates this Fourth Amendment right. *Durrithy v. Pastor*, 351 F.3d 1080, 1088 (11th Cir. 2003)(citing *Redd v. City of Enterprise*, 140 F.3d 1378, 1382 (11th Cir. 1998)). The Eleventh Circuit has concluded that the standard for determining the existence of probable cause is whether " 'a reasonable man would have believed [probable cause existed] had he known all of the facts known by the officer.' " *Rankin v. Evans*, 133 F.3d 1425, 1433 (11th Cir. 1998)(quoting *United States v. Ullrich*, 580 F.2d 765, 769 (5th Cir. 1978)). Furthermore, "officers who make an arrest without probable cause are entitled to qualified immunity if there was arguable probable cause for the arrest." *Kingsland v. City of Miami*, 382 F.3d 1220, 1232 (11th Cir. 2004)(citing *Jones v. Cannon,* 174 F.3d 1271, 1283 (11th Cir. 1999)). Arguable probable cause exists if reasonable officers in the same circumstances and possessing the same knowledge as Defendants could have believed that probable cause existed to arrest Plaintiff. *Id.* Therefore, the important question here is whether Defendant Floyd had arguable probable cause to arrest Plaintiff.

In this case, Defendant Floyd could have believed that probable cause existed to arrest Plaintiff. First, there was an ongoing emergency, which Plaintiff was not involved with. Plaintiff admits that he walked over to the scene and got 6-10 feet away from the back of the ambulance. (Doc. 34, Exhibit 1, p. 119).

Witness testimony provides that Defendant Floyd told Plaintiff numerous times to leave the scene because he was "disrupting what we're doing." (*Id.*, p. 123). Jonathan Hoke, who worked for EMS and responded to the scene, wrote in his Witness Interview Statement that Defendant Floyd:

> numerous times told a gentleman to leave a scene because he was disrupting the scene but the gentleman kept raising his voice louder and louder telling Lt. Floyd he did not have to leave the scene and when the gentleman came closer to the edge of the road Lt. Floyd walked up to the gentleman and placed one hand on his chest to attempt to have him step back and move on pass the scene. Then the gentleman smacked Lt. Floyds [sic] hand off his chest and then Lt. Floyd pulled out his Taser and attempted to put the gentleman into custody along with other Crestview Police officers.

(Doc. 34, Exhibit 11).

In addition, Defendant Floyd's description of the situation as his understood it shows that there were reasons for wanting Plaintiff to back away from the scene:

> I had been receiving information that there was a weapon involved, a razor blade. There was blood contamination involved. They were bringing the patient over to the back of the ambulance and putting him in there. He was bleeding. He has privacy issues. I didn't know exactly what he had, if a crime had occurred along with the Baker Act. There was [sic] a bunch of things that were going through my head. I just know that Mr. Siler being there and coming to the back of the ambulance was going to hinder my assessment of what was going on.

(Doc. 34, Exhibit 4, p. 72). Given that Plaintiff refused to back away from an emergency situation after repeatedly being told to do so by a law enforcement officer and then "smacking" Defendant Floyd's hand away, reasonable officers in the same circumstances and possessing the same knowledge as Defendant Floyd

could have believed that probable cause existed to arrest Plaintiff for battery on a law enforcement officer.  Because Defendant Floyd did not violate a clearly established constitutional right, he is entitled to qualified immunity.

Counts II & III

Counts two and three allege Defendant Floyd violated Plaintiff's right to due process when he arrested Plaintiff without probable cause on April 29, 2008, and August 28, 2008, and when Floyd prepared arrest affidavits and offense reports for these arrests that contained false and misleading information.  The "Constitution prohibits a police officer from knowingly making false statements in an arrest affidavit about the probable cause for an arrest in order to detain a citizen . . . if such false statements were necessary to the probable cause."  *Jones v. Cannon*, 174 F.3d 1271, 1285 (11th Cir. 1999).  However, a warrant is valid if "absent the misstatements or omissions, there remains sufficient content to support a finding of probable cause."  *Dahl v. Holley,* 312 F.3d 1228, 1235 (11th Cir. 2002).  Furthermore, qualified immunity will not shield an officer from liability for such false statements if they were necessary to the probable cause.  *Id.*

Count II is based upon the events that occurred on August 28, 2008.  As stated above, given the circumstances of the emergency situation, Plaintiff's refusal to back away from the scene, and the subsequent "smacking" away of Defendant Floyd's hand, Floyd could have believed that probable cause existed at the time

Plaintiff was arrested. Therefore, any false statements made in the arrest affidavit or offense report were not necessary to support Defendant Floyd's belief that there was probable cause to arrest Plaintiff.

Count III is based upon the events that occurred on April 29, 2008. In his deposition, Plaintiff admits to blocking the police vehicle in the Lot and refusing to move it for several minutes after being asked to by law enforcement officers. (Doc. 34, Exhibit 1, p. 70-73). Plaintiff argues that Defendant Floyd and his partner could have exited through another gate; however, the gate was closed, Defendant Floyd believed there was a padlock, and Plaintiff never informed the officers of the other exit. (*Id.*, p. 73). Plaintiff was later arrested for obstruction of a law enforcement officer. Plaintiff admits to blocking the police vehicle for several minutes so any superfluous false statements made in the arrest affidavit or offense report certainly were not necessary to support a finding of probable cause. Because there was a sufficient belief of probable cause for each arrest regardless of any false statements made by Defendant Floyd, Plaintiff's due process rights were not violated.

## Count V

Count five is a state law battery claim against Defendant Floyd from the August 28th incident. Fla. Stat. § 784.03 defines battery as actually and intentionally touching another person against their will. However, when a police

officer is on duty, the officer can use force in good faith and is "liable for damages only where the force used is clearly excessive." *City of Miami v. Sanders,* 672 So.2d 46, 47 (Fla. 3d DCA 1996). Defendant Floyd, while on-duty, put his hand on Plaintiff's chest to make him back away from an emergency situation. Given the circumstances, this touching does not constitute excessive force. Therefore, the battery claim fails.

## Count VI

Count six is a state law false imprisonment claim against both Defendants Floyd and Mitchell for the arrest on August 28th. False imprisonment and false arrest are "different labels for the same cause of action." *Rankins v. Evans*, 133 F.3d 1425, 1431 n.5 (11th Cir. 1998). "Probable cause is an absolute bar to claims for false arrest." *Mills v. Town of Davie*, 48 F.Supp.2d 1378, 1380 (S.D. Fla. 1999). Sufficient probable cause to justify an arrest exists where the facts and circumstances allow a reasonable officer to conclude that an offense has been committed and requires an examination of the totality of the circumstances. *Id.* As discussed above in Count I, a reasonable officer in similar circumstances could have believed there was probable cause to arrest Plaintiff. Therefore, there is an absolute bar to this claim for false imprisonment.

Count VII

Count seven is a state claim for malicious prosecution against Defendant Floyd arising out of the April 29th arrest. There are six elements for a claim of malicious prosecution: (1) a judicial proceeding was commenced against the plaintiff; (2) the defendant was the "legal cause" of the proceeding; (3) the proceeding was terminated in favor of the plaintiff; (4) no probable cause existed to institute the prosecution; (5) the defendant acted with malice; and (6) the plaintiff suffered damages as a result of the proceeding. *Kingsland v. City of Miami*, 382 F.3d 1220, 1234 (11th Cir. 2004). "The failure of a plaintiff to establish any one of the six elements is fatal to a claim of malicious prosecution." *Alamo Rent-A-Car, Inc. v. Mancusi*, 632 So.2d 1352, 1355 (Fla. 1994). As discussed above in Count III, there was sufficient probable cause to arrest Plaintiff for obstructing a law enforcement officer when Plaintiff refused to move his truck which was preventing the police vehicle from exiting the Lot. Therefore, Plaintiff fails to establish element 4 for malicious prosecution, which is fatal to the claim.

### IV. CONCLUSION

Summary judgment is granted for Defendant against Plaintiff. The clerk is directed to close the case.

**ORDERED** on August 26, 2011.

> **/s/ Richard Smoak**
> **RICHARD SMOAK**
> **UNITED STATES DISTRICT JUDGE**